UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TONI L. SANDERS, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-05-2306 |
| § | |
| JO ANNE B. BARNHART, Commissioner § | |
| of the Social Security Administration, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from the denial of Social Security disability benefits are the parties' cross-motions for summary judgment. After considering the parties' filings and the applicable law, the Court finds that Plaintiff's motion, Docket No. 11, should be and hereby is **GRANTED**; Defendant's motion, Docket No. 10, should be and hereby is **DENIED;** and this case should be and hereby is **REMANDED** to the Administrative Law Judge for further proceedings not inconsistent with this Memorandum and Order.

I.   BACKGROUND

Plaintiff Toni L. Sanders has a high school education and has worked as a home health care provider.  In January 2001, she filed an application for Social Security disability benefits on the basis of knee and back pain, hypertension, shortness of breath, and obesity.  Her claim was denied initially and upon reconsideration, and she requested, and was granted, a hearing before an Administrative Law Judge ("ALJ").  At the time of the hearing, Sanders was forty-nine years old; stood five feet, seven inches tall; and weighed approximately 330 pounds.

1

At the hearing, Administrative Law Judge ("ALJ") Harry L. Williams, Jr. heard the Sanders's testimony as well as that of Vocational Expert ("VE") Philip Roddy. The ALJ subsequently concluded that, although Sanders's functional capacity ("RFC") limits her to less than the full range of sedentary work, Sanders is capable of performing jobs existing in significant numbers in the economy and is, therefore, not disabled. Sanders now appeals that decision.

## II.    ANALYSIS

### A.    Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 4777 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### B.    Standard of  Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d

1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The medical opinion of a claimant's treating physician should be given controlling weight, so long as it has reasonable support and is not inconsistent with the other substantial record evidence.  S.S.R. 96-2p (Cum. Ed. 1982), 1982 WL 31389, at *1.

If a claimant can satisfy the first four prongs of the test, the burden then shifts to the Commissioner to establish that the claimant is capable of performing "substantial gainful activity" and therefore is not disabled.  *Id.*  To do so, the Commissioner must produce "'expert vocational testimony or other similar evidence' that jobs exist[,] in the national economy[,] that the applicant can perform."  *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (quoting *Ghorman v. Heckler*, No. 85-3444, slip op. at 9-10 (5th Cir. 1986), 782 F.2d 1038 (table)).

At step five of the analysis, the ALJ must take into consideration the transferability of skills that the claimant has acquired through previous employment.  The Social Security Administration ("SSA") defines and assesses transferability as follows:

> (1) What we mean by transferable skills.  We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  This depends largely on the similarity of occupationally significant work activities among different jobs.
> (2) How we determine skills that can be transferred to other jobs.  Transferability is most probable and meaningful among jobs in which—
> (i) The same or a lesser degree of skill is required;
> (ii) The same or similar tools and machines are used; and
> (iii) The same or similar raw materials, products, processes, or services are involved.
> (3) Degrees of transferability.  There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs.  A complete similarity of all three factors is not necessary for transferability.  However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568(d) (2000).

### D. Sanders's Claim

In this case, it is undisputed that Sanders has satisfied the first four prongs of the *Bowling* test. (*See* Tr. of Administrative Hrg. at 24 (Admin. Rec. at 288) (reflecting the VE's testimony that Sanders is incapable of performing her previous job and that she possesses no transferable skills).) Sanders argues that the ALJ should have accorded controlling weight to the medical opinion of Sanders's treating physician. She further asserts that the ALJ erred, at step five, in failing to consider the impact of Sanders's obesity, in combination with her other impairments, upon her RFC. The Commissioner contends that the ALJ's decision is substantially supported by the record evidence.

In his decision, the ALJ discounted the medical opinion of Sanders's treating physician, Dr. Moorehead, whose report stated that Sanders suffers severe chronic lower back pain that renders her unable to stand, sit, or walk for even an hour at a time. (*See* ALJ's Decision at 5 (Admin. Rec. at 21).) The ALJ found Dr. Moorehead's report to be inconsistent with his own treatment notes, which, according to the ALJ, do not reflect a diagnosis of "severe" pain. (*Id.*)

A review of Dr. Moorehead's notes reveals, however, that Sanders often complained of extreme pain in her back and legs. (*See* Admin. Rec. at 172 ("But now the medication is ineffective and she is again in great pain."); *id.* at 181 ("She reports that she still experience[s] moderate pain of the back. She has varying intensity of the pain . . . . Bending and lift[ing] is really bad."); *id.* at 184 (noting "increased lower back pain with strains" and "mark[ed] right sciatic notch tenderness"); *id.* at 189 (same).) These notes and Dr. Moorehead's report are consistent with other substantial record evidence. (*See*

5

*id.* at 197 (noting, in a Functional Capacity Evaluation, that Sanders's "pain reports and/or pain behaviors . . . were very high" and were "valid, reflecting her true functional capacity" and that "the high pulse rates generated with most of the weighted activities . . . could further indicate pain and/or deconditioning"); *id.* at 207 (same).) Accordingly, the Court finds that the ALJ erred in discounting Dr. Moorehead's medical opinion.

Moreover, Sanders is correct in stating that the ALJ improperly failed to consider the impact of Sanders's obesity upon her RFC. Although the ALJ's decision repeatedly notes Sanders's weight (*see* ALJ's Decision at 3 (Admin. Rec. at 19) ("On January 20, 1999, Ms. Sanders weighed 334 pounds."); *id.* at 4 (Admin. Rec. at 20) ("[On June 8, 2001, Sanders] weighed 305 pounds."); *id.* at 5 (Admin. Rec. at 21) ("At the hearing, Ms. Sanders testified that she currently weighs 330 pounds.")), it contains no discussion of the combined effect of her obesity and her other limitations. In fact, the ALJ appears to have disregarded Sanders's obesity on the ground that it is within her control. (*See id.* at 4 (Admin. Rec. at 20) ("Dr. Moorehead has consistently encouraged the claimant to lose weight, as it would positively impact her lower back problems . . . ."); *id.* at 5 (Admin. Rec. at 21) ("Ms. Sanders has . . . been repeatedly instructed to lose weight and has failed to do so.").)

The Fifth Circuit has unequivocally held that an ALJ acts improperly where he dismisses the impact of a claimant's obesity, absent evidence that that impairment can reasonably be remedied by treatment:

> It is apparent that the ALJ, influenced by Scott's failure to lose weight, discounted her obesity as an impairment contributing to her overall condition.
> This court did state, in *Stillwell v. Cohen*, [411 F.2d 574, 575 (5th Cir. 1969),] in which there was persuasive evidence that a reduction in weight would ease many of appellant's problems, that [i]f an impairment

6

> reasonably can be remedied by treatment, it cannot serve as a basis for a finding of disability. It is a maxim, not to be disregarded, however, as Chief Justice Marshall observed over a century ago, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. Scott is only five feet four inches tall, weighs almost 200 pounds, and, according to her doctor, is massively overweight. She suffers from obesity of such severity, together with other serious impairments, that there is no indication that her condition is reasonably remediable. Significant weight loss is indeed difficult even for the iron willed. For the less determined, who suffer from other painful and debilitating impairments that restrict movement and no doubt sap the resolve for self-improvement, such a significant loss of weight may be impossible.

*Scott v. Heckler*, 770 F.2d 482, 486 (5th Cir. 1985) (internal quotation marks and citations omitted).

In this case, the claimant stands five feet, seven inches tall and weighs well over 300 pounds. Accordingly, the *Scott* decision required the ALJ to address the impact of Sanders's obesity upon her other impairments and her RFC. His failure to do so was error.

### III.   CONCLUSION

Because the ALJ erred in failing to grant controlling weight to the opinion of Sanders's treating physician and in disregarding the impact of Sanders's obesity upon her RFC, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion is **DENIED**, and this case is **REMANDED** to the ALJ for further proceedings not inconsistent with this Memorandum and Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 2nd day of August, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**